J-S71017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M. and J.M., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.M., GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2392 EDA 2018 |

Appeal from the Order Entered July 24, 2018
In the Court of Common Pleas of Delaware County
at No(s): CP-23-DP-0000185-2016
CP-23-DP-0000186-2016

BEFORE: PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 23, 2019**

Appellant, E.M. ("Maternal Grandmother"), appeals *pro se* from the July 24, 2018 Orders that adjudicated her grandchildren J.M. ("Child 1") and J.M. ("Child 2") (collectively "the Children") dependent and placed them in foster care.[1,2] After careful review, we conclude that that Maternal Grandmother does not have standing and, therefore, we dismiss this appeal.

---

[1] The Orders are dated July 11, 2018 and were docketed on July 18, 2018. However, the prothonotary did not serve notice of the Orders until July 24, 2018. *See* Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given[.]"). We have changed the caption accordingly.

[2] Maternal Grandmother filed a Notice of Appeal that named both Child 1 and Child 2 but only listed one docket number. On September 5, 2018, this Court issued a Rule to Show Cause why this appeal should not be quashed as Maternal Grandmother was taking one appeal from two orders in violation of

A detailed recitation of the factual and procedural history is unnecessary to our disposition. Briefly, the family has an extensive history with CYS. The Children's mother passed away in 2014. CYS investigated multiple reports of abuse and neglect while the Children were living with Maternal Grandmother in 2014 and 2016.

In March of 2018, the Children began to reside with their biological father, R.B. ("Father"). On March 29, 2018, CYS received a report that Child 1 had been sexually abused by Maternal Grandmother's paramour. On May 3, 2018, CYS received a report that Child 2 was truant from school. CYS attempted to provide services to Father and the Children but Father was uncooperative. In June of 2018, Father sent the Children to stay with a family friend who, in turn, returned the Children to the care of Maternal Grandmother without Father's knowledge. On June 29, 2018, CYS obtained an Order for Emergency Protective Custody to remove the Children from the care of Father but the Children's whereabouts remained unknown.

On July 2, 2018, Delaware County Children and Youth Services (CYS) filed Dependency Petitions alleging, *inter alia*, that the Children's mother was deceased and the Children's father had an extensive criminal history, had a warrant out for his arrest, had not been a consistent caretaker for the

_____

*Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). In light of the fact that Maternal Grandmother's Notice of Appeal only listed one docket number, and that this Court denied Maternal Grandmother's Application to Amend, we decline to quash this appeal pursuant to *Walker.*

Children, and was unable to care for the Children due to feeling depressed. The Dependency Petitions also alleged that the Children were truant from school. The Dependency Petitions listed Father as the Children's parent and did not list any additional legal guardians.

On July 10, 2018, Maternal Grandmother surrendered the Children at the scheduled adjudicatory hearing. CYS took custody of the Children and the trial court continued the adjudicatory hearing until the next day.

On July 11, 2018, the trial court held an adjudicatory hearing and adjudicated the Children dependent based on lack of proper parental care and made a finding that it was in the Children's best interest to be removed from Father's home and placed in foster care.[3] On July 17, 2018, Maternal Grandmother filed a *pro se* Motion for Reconsideration. On July 23, 2018, Maternal Grandmother filed a *pro se* Petition for Writ of *Habeas Corpus*. CYS filed responses to both the Motion and the Petition, asserting that Maternal Grandmother lacked standing.

On August 7, 2018, before the trial court ruled on Maternal Grandmother's Motion and Petition, Maternal Grandmother filed a *pro se* Notice of Appeal. Both Maternal Grandmother and the trial court complied with Pa.R.A.P. 1925.

Maternal Grandmother raises the following issues on appeal:

---

[3] The Orders are dated July 11, 2018 and were docketed on July 18, 2018. However, the prothonotary did not serve notice of the Orders until July 24, 2018.

1. Whether the lower court and [CYS] committed reversible error in [failing] to acknowledge that [Maternal Grandmother] has legal standing as a grandparent in custody, dependency, and adjudicatory matters pursuant to Title 23§5313 (a) – (b), (1-3) et seq [*sic*].

2. Whether the lower court committed reversible error by prohibiting and depriving [Maternal Grandmother] of procedural and substantive due process in the failure to allow [Maternal Grandmother] as primary and sole custodian of the [C]hildren herein, the constitutional right be present and to contest to the dependency and adjudication process of her two grandchildren, not limited to, but including the right to offer mitigating and exculpatory evidence, present witness, testimony documents, cross examine adverse witnesses et seq., pursuant to 237 Pa.Code Rule 1128 [*sic*].

3. Whether the lower court committed reversible error in prohibiting and depriving [Maternal Grandparent] of her due right to be present at the aforesaid adjudicatory hearing without explanation or just cause, despite receiving mailed notices, orders, subpoenas and petitions from the court acquiring her mandatory appearance at such hearing and designating [Maternal Grandmother] as a party to the proceedings.

4. Whether the lower court committed reversible error in the failure to allow [Maternal Grandparent] to introduce mitigating and contradictory evidence regarding false allegations made by [Father] (the natural father of [Child 1]), and to demonstrate that such allegations are altogether events that never transpired.

5. Whether the lower court committed reversible error by failure to ascertain or allow [Maternal Grandmother] the opportunity to assist in temporary family placement or family findings for her (two grandson's), who were both adjudicated to foster care.

6. Whether the court relied upon clear and convincing evidence in [its] adjudication determination, and whether a child can be adjudicated dependent where the non-custodial parent or guardian is ready, willing, and able to provide adequate care for the child.

7. Whether the [Children] in this matter received effective assistance of counsel.

8. Whether [the] Children in this matter [have] been subjected to double jeopardy as they were adjudicated twice for dependency and then adjudicated a third time for placement in a foster home on the basis of false statements induced though constant beating, threats, intimidation and coercion of [Children] by [Father] of [Child 1].

Appellant's Brief at 11-13 (some numeration added).

As an initial matter, we must determine whether we have jurisdiction to consider this appeal. This Court has repeatedly held: "[w]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *K.B. II v. C.B.F.*, 833 A.2d 767, 774 (Pa. Super. 2003) (citation, quotation, and emphasis omitted). A party seeking to appeal must, as a prerequisite, establish that they have standing to appeal. *In Interest of Garthwaite*, 619 A.2d 356, 357 (Pa. Super. 1993). An issue regarding standing to participate in dependency proceedings is a question of law; our standard of review is *de novo* and our scope of review is plenary. *In re S.H.J.*, 78 A.3d 1158, 1160 (Pa. Super. 2013).

The Juvenile Act governs dependency proceedings. *See* 42 Pa.C.S. § 6301, *et seq*. "Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted." *In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006). Hearings are closed to the general public and only a "party" has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. *Id.; see also* 42 Pa.C.S § 6336(d); 42 Pa.C.S. § 6338(a). This Court has repeatedly held that

in a dependency proceeding, "party" status is limited to three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question. *In re L.C., II, supra* at 381; *In re S.H.J., supra* at 1160-61. "These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian." *In re L.C., II*, *supra* at 381 (citing 42 Pa.C.S. § 6351). "Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings." *In re L.C., II*, *supra* at 381 (citation omitted).

Importantly, the Juvenile Act specifically notes that absent legal custody, a relative providing care for a child does not have standing to participate in the proceedings. 42 Pa.C.S. § 6336.1(a).

Instantly, Maternal Grandmother does not fall within any of the foregoing definitions of a "party." It is undisputed that Maternal Grandmother is not the Children's parent. Moreover, our review of the record indicates that Maternal Grandmother is not the legal custodian, and she is not the person whose care and control of the Children is in question. On the contrary, the trial court removed Children from the care and control of their Father, who had legal custody of Children. *See* Adjudication Order, 7/18/18. While Maternal Grandmother has cared for the Children in the past, a relative who

- 6 -

is simply providing care for a child does not have standing to participate in the proceedings. *See* 42 Pa.C.S. § 6336.1(a).

Maternal Grandmother argues that she has standing to participate in Children's dependency proceedings under the Custody Act, Section 5325, which grants a grandparent standing to file for physical custody in certain situations. *See* 23 Pa.C.S. § 5325. However, Maternal Grandmother's reliance on this statute is misplaced. While Section 5325 may, in fact, grant her standing to file for custody of Children at a later date, it does not confer standing for her to participate in dependency proceedings, which are governed by the Juvenile Act, discussed *supra*.

Maternal Grandmother did not have standing to participate in the adjudication of dependency hearing, and, therefore, we are without jurisdiction to decide the merits of her issues. *See K.V. II., supra* at 774; *Garthwaite, supra* at 358. Accordingly, we are constrained to dismiss this appeal.[4]

Appeal dismissed.

---

[4] This Court has received the July 11, 2018 transcript of the Adjudicatory Hearing and admitted exhibits. In light of this, we deny Maternal Grandmother's Application for Writ of *Mandamus* as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/19